# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING

**KATRINA ANNE TAYLOR,**

    Plaintiff,

v.                                       **CIVIL ACTION NO. 5:17-CV-148**
                                                             **(BAILEY)**

**OHIO COUNTY COMMISSION,**
**TIFFANY HOFFMAN, and**
**MICHELLE POWELL,**

    Defendants.

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND REMANDING STATE LAW CLAIMS

On this day, the above-styled action came before this Court for consideration of the defendants' Motion to Dismiss [Doc. 3], filed October 4, 2017. Having been fully briefed, this matter is now ripe for decision. For the reasons stated herein, this Court **GRANTS IN PART** the defendants' Motion to Dismiss **[Doc. 3]**, **DISMISSES** the claims allegedly arising under the United States Constitution, and **REMANDS** the state law claims to the Circuit Court of Ohio County, West Virginia.

## BACKGROUND

Plaintiff, Katrina Anne Taylor, filed her Complaint in the Circuit Court of Ohio County, West Virginia, on September 5, 2017 [Doc. 1-9]. This matter arises from plaintiff's contention that defendants created a hostile work environment and ultimately fired plaintiff from her job at the Ohio County Assessor's Office in retaliation for plaintiff running for the position of Ohio County Assessor.

Specifically, plaintiff asserts that "[o]n or about July 11, 2016, the previous assessor

1

passed away unexpectedly, and Defendant, Michelle Powell, was appointed as assessor on a temporary basis until the election was completed" [Id. at ¶ 9]. Plaintiff then ran against defendant, Tiffany Hoffman, for the office of Ohio County Assessor during the November 2016 election [Id. at ¶ 10].

Plaintiff claims that around August 2016, after Ms. Powell and Ms. Hoffman learned plaintiff was running for Assessor:

> Plaintiff began suffering a hostile work environment created largely by Defendant Powell, and contributed to by Defendant Hoffman once she took office. Said hostile work environment included b[ut] was not limited to, withholding important paperwork from Plaintiff which was needed to complete her job duties, refraining from turning in specific documents to create an illusion that Plaintiff was not sufficiently fulfilling her job requirements, and excluding her from the decision making process within the real estate office which had always been a part of her job description previously.
>
> Further, upon information and belief, Plaintiff earned compensatory time by working overtime and said time was taken away upon Defendant Hoffman taking office, additionally Plaintiff was removed from the employee rotation for leaving early.

[Id. at ¶¶ 11-12]. Plaintiff further contends that in January 2017 she was "written up for the first time in her ten (10) years with the Ohio County Assessor's Office, for no[t] maintaining her job performance and for complaints from taxpayers" [Id. at ¶ 13]. However, plaintiff claims she "was not provided information regarding the specific areas of her job that had been lacking nor was she provided the nature of said complaints or documentation regarding the same" [Id.].

After being "written up," plaintiff claims she "was placed on probation but was not given a timeline [sic] or terms of said probation and no re-evaluation was done to determine when/if the probation period would conclude" [Id. at ¶ 14]. Plaintiff claims she requested, but was never provided with, "documentation to support . . . the reasoning for the

2

disciplinary action taken against her" [Id. at ¶¶ 15-16].

Ultimately, plaintiff claims that on or about March 17, 2017, she met with defendant, Tiffany Hoffman, and in said meeting plaintiff was informed "that her employment was being terminated as they felt that due to her 'mistakes' it would cost more in the long run to keep her employed" [Id. at ¶ 19]. Plaintiff again claims she "requested documentation but was still not provided an explanation of what mistakes had been made nor was she provided with documentation related to the same" [Id. at ¶ 20].

Accordingly, the Complaint alleges five counts against all defendants, which include (I) "Violation of First Amendment Rights of Freedom of Speech and Freedom of Association Brought Pursuant to 42 U.S.C. § 1983," (II) "Violation of Rights of Freedoms of Speech, Association and Candidacy Protected by Article III, § 7 and § 16 and Article IV, § 1 and § 4 of the West Virginia Constitution," (III) "Violation of Fourteenth Amendment Rights Protected by the Fourteenth Amendment to the United States Constitution by 42 U.S.C. § 1983, And [sic] by Article III, § 10 of the West Virginia Constitution," (IV) "Violation of First Amendment Rights by Engaging in Political Patronage under 42 U.S.C. § 1983," and (V) "Tort of Outrage" [Id. at ¶¶ 21-45]. Specifically, Count I alleges the defendants created a hostile work environment "to intimidate Plaintiff to withdraw from the campaign" and that plaintiff was "terminated for political reasons in retaliation of [sic] Plaintiff's exercising her First Amendment rights to free speech and free association in seeking public office" [Id. at ¶¶ 23-24]. Count II essentially alleges the same, yet states grounds for relief arising under the West Virginia Constitution [Id. at ¶¶ 25-31]. Count III alleges defendants' actions "sought to deprive Plaintiff Taylor of her rights to due process and equal protection of the law secured by the Fourteenth Amendment to the United States Constitution . . . [and] the

3

West Virginia Constitution" [Id. at ¶ 36]. Count IV alleges defendants "violated Plaintiff Taylor's First Amendment rights by engaging in political patronage in retaliation for Plaintiff Taylor seeking the office of Ohio County Assessor" and that plaintiff was fired "for solely political reasons" [Id. at ¶¶ 37-41]. Finally, Count V alleges "[t]he wrongful employment acts and/or omissions taken against Plaintiff Taylor were done in an outrageous manner and were so extreme as to be intolerable in a civilized society. Defendants acted intentionally or with reckless indifference that said actions were likely to cause extreme emotional distress" [Id. at ¶¶ 43-44].

The action was removed to the United States District Court for the Northern District of West Virginia based on federal question jurisdiction on September 28, 2017 [Doc. 1]. Defendants filed the instant Motion to Dismiss on October 4, 2017 [Doc. 3]. The Motion contends the following:

> 1. Plaintiff's First Amendment claim does not meet the requirements of *Twombly* and *Iqbal*, and must therefore be dismissed for failure to state a claim upon which relief can be granted;
> 2. Plaintiff does not have a clear First Amendment right to candidacy;
> 3. Plaintiff pleads no facts whatsoever that indicate her "speech" was a "substantial factor" in her dismissal;
> 4. Plaintiff has no liberty or property right to her employment, and none of Plaintiff's due process rights were violated;
> 5. Defendants have qualified immunity from Plaintiff's claims;
> 6. Plaintiff does not properly plead a claim supporting a § 1983 allegation against the Ohio County Commission, and all claims against Ohio County Commission must be dismissed;
> 7. Plaintiff's claims of "outrage" do not meet the pleading standard set forth in *Iqbal* and *Twombly*, and do not meet the standard necessary to continue with the claim.

[Id. at 2-3].

## **LEGAL STANDARD**

In reviewing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6), a district court must accept the factual allegations in the complaint as true. **Zak v. Chelsea**, 780 F.3d 597, 601 (4th Cir. 2015) (citing **Matrix Capital Mgmt. Fund, LP v. Bearing Point, Inc.**, 576 F.3d 172, 176 (4th Cir. 2009)). While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." **Papasan v. Allain**, 478 U.S. 265, 286 (1986).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008) (quoting **Twombly**, 550 U.S. at 547) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Ashcroft v. Iqbal**, 556 U.S. 662, 678 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." **Id.** However, when reviewing the sufficiency of a complaint, a court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." **Tellabs, Inc. v. Makor Issues & Rights, Ltd.**, 551 U.S. 308, 322 (2007). A court may consider documents attached to a motion to dismiss when they are "integral to and explicitly relied on in the complaint and . . . the plaintiffs do not challenge [their] authenticity." **American**

5

*Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

## DISCUSSION

### A. Count I

Count I of the Complaint, brought pursuant to 42 U.S.C. § 1983, alleges defendants created a hostile work environment "to intimidate Plaintiff to withdraw from the campaign for the office of the Ohio County Assessor" and that plaintiff was "terminated for political reasons in retaliation of [sic] Plaintiff's exercising her First Amendment rights to free speech and free association in seeking public office" [Doc. 1-9 at ¶¶ 23-24]. Section 1983 allows for a plaintiff to assert a claim against any "person" who, acting under color of state law, "depriv[ed] [another] of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. A plaintiff seeking to bring a claim under § 1983 must meet two requirements: (1) the conduct complained of was committed by a person acting under color of law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured

to him by the Constitution and the laws of the United States. See **Wirth v. Surles**, 562 F.2d 319, 321 (4th Cir. 1977) (citing **Monroe v. Pape**, 365 U.S. 167 (1961)).

Defendants argue, *inter alia*, that plaintiff's claims under Count I must be dismissed because qualified immunity bars the claim. "Qualified immunity protects [public officials] from liability or, in many instances, from having to stand trial when the [official] makes a decision that even if constitutionally deficient, 'reasonably misapprehends the law governing the circumstances she confronted.'" **Hutchinson v. Lemmon**, 436 Fed. App'x 210, 214 (4th Cir. 2011) (quoting **Brosseau v. Haugen**, 543 U.S. 194, 198 (2004)). "[A] plaintiff may prove that an official has violated his rights, but an official is nonetheless entitled to qualified immunity if a reasonable person in the official's position could have failed to appreciate that his conduct would violate those rights." **Torchinsky v. Siwinski**, 942 F.2d 257, 261 (4th Cir. 1991). Qualified immunity acts to protect "all but the plainly incompetent or those who knowingly violate the law." **Malley v. Briggs**, 475 U.S. 335, 341 (1986).

As an initial matter, this Court must identify whether any statutory or constitutional rights were violated and then ask whether those rights were clearly established at the time of the violation. **Pearson v. Callahan**, 555 U.S. 223, 232 (2009); **Hunter v. Town of Mocksville, N.C.**, 789 F.3d 389, 396 (4th Cir. 2015). This Court, in its discretion, may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." **M.C. ex rel. Crawford v. Amrhein**, 598 Fed. App'x 143, 146 (4th Cir. 2015) (citing **Pearson**, 555 U.S. at 236).

Here, it is unclear whether the mere declaration of a candidacy is protected by the

7

First Amendment, such that plaintiff's constitutional rights were violated. Further, even assuming the First Amendment provided such rights, this Court does not believe those rights were clearly established at the time of the alleged violation. Accordingly, Count I of the plaintiff's Complaint [Doc. 1-9] must be dismissed.

Although the First Amendment generally protects the rights of individuals to engage in political speech, in the absence of such accompanying speech, the boundaries of the constitutional right to political candidacy itself is undetermined. While the United States Supreme Court has considered cases involving laws that obstruct an individual's opportunity to run for office,[1] the Supreme Court has not a heard a case, such as this one, wherein a plaintiff alleges unconstitutional retaliation on the basis of candidacy itself. As a result, the federal circuit courts are split as to the extent, if any, of constitutional protection for candidacy and offer different rationales for protection afforded, or not afforded, to a public employee who announces his or her candidacy for public office.

The Sixth and Seventh Circuits have held that an announcement of candidacy, in and of itself, does not implicate the First Amendment. ***Carver v. Dennis***, 104 F.3d 847, 853 (6th Cir. 1997); ***Newcomb v. Brennan***, 558 F.2d 825, 828 (7th Cir. 1977). In these circuits, the First Amendment will only be implicated when a candidate engages in activity that independently constitutes speech as a public concern under ***Pickering v. Board of Education***, 391 U.S. 563 (1968), or political association under ***Elrod v. Burns***, 427 U.S. 347 (1976). See ***Murphy v. Cockrell***, 505 F.3d 446, 451 (6th Cir. 2007). In contrast, the Eleventh Circuit has held that an announcement of candidacy alone is protected by the

---

[1] See ***Clements v. Fashing***, 457 U.S. 957 (1982); ***Bullock v. Carter***, 405 U.S. 134 (1972); ***Williams v. Rhodes***, 393 U.S. 23 (1968).

First Amendment. See **Randall v. Scott**, 610 F.3d 701, 710 (11th Cir. 2010). The Fifth, Ninth, and Tenth Circuits have held that candidacy announcements are protected under the First Amendment as a form of expression. See **Jantzen v. Hawkins**, 188 F.3d 1247, 1257 (10th Cir. 1999); **Click v. Copeland**, 970 F.2d 106, 111-12 (5th Cir. 1992); **Finkelstein v. Bergna**, 924 F.2d 1449, 1453 (9th Cir. 1991).[2]

The Fourth Circuit has seemingly not weighed in on this issue. Plaintiff cites **Gillen v. Huggins**, 1997 WL 657134 (4th Cir. Oct. 23, 1997), to support her proposition that "[f]ederal law clearly hold[s] that Plaintiff Taylor would have a cause of action for being wrongfully terminated due to running for political office" [Doc. 5 at 7]. However, the **Gillen** plaintiffs "spoke to reporters despite [their boss's] warning not to do so." **Gillen**, 1997 WL 657134 at *2. Thus, **Gillen** is not helpful to plaintiff here as it involved actual speech, wherein this case plaintiff has not alleged retaliation against any actual speech or expression, but rather simply against her announcement of candidacy itself. In seemingly the most recent case along these lines considered by the Fourth Circuit, the court stated "we have never recognized a First Amendment right to hold elected office, [and] we need not decide whether such a right exists to resolve this case." **Loftus v. Bobzien**, 848 F.3d 278, 285 (4th Cir. 2017). Thus, it remains an open question in this circuit whether the First Amendment protects a right to candidacy.

Here, plaintiff admits that she "has not plead [sic] an exact issue that she spoke about which resulted in her termination" [Doc. 5 at 5]. Instead, plaintiff has pled that she

---

[2] For a detailed discussion of this topic and the differing approaches of the federal circuit courts, see Ross Staine, *First Amendment Protection for Political Candidacy of Public Employees*, 66 SMU L. Rev. 461 (2013).

"was retaliated against and terminated for declaring a candidacy for public office and for campaigning for said public office" [Id. at 5]. Therefore, it seems to this Court that nothing in plaintiff's Count I would independently constitute speech as a public concern under ***Pickering*** or political association under ***Elrod***. This is not a typical "whistle blower" case for which a standard has been announced. *See **Wagner v. Wheeler***, 13 F.3d 86, 90 (4th Cir. 1993). Instead, plaintiff's Count I alleges her constitutional rights were violated because her declaration of candidacy is protected by the First Amendment. As discussed above, the federal circuit courts are split on this issue, and the Fourth Circuit has not come down on either side of the debate.

Therefore, it is not clear that plaintiff even had a right, privilege, or immunity secured to her by the Constitution that defendants' alleged conduct could have infringed upon—which is the second requirement to bringing a § 1983 action. *See **Wirth v. Surles***, 562 F.2d 319, 321 (4th Cir. 1977) (citing ***Monroe v. Pape***, 365 U.S. 167 (1961)). Further, even assuming the First Amendment provides protection to the announcement of candidacy, and even further assuming defendants' conduct violated that right, it was not clearly established law at the time of the violation. "[I]n gray areas, where the law is unsettled or murky, qualified immunity affords protection to an [official] who takes an action that is not clearly forbidden—even if the action is later deemed wrongful." ***Rogers v. Pendleton***, 249 F.3d 279, 286 (4th Cir. 2001) (citing ***Maciariello v. Summer***, 973 F.2d 295, 298 (4th Cir. 1992)). Therefore, as to Count I, plaintiff has not met the requirements for bringing a claim under § 1983. Furthermore, since the right plaintiff claims under the First Amendment was not clearly established at the time of the violation, defendants are

10

entitled to qualified immunity.

Accordingly, Count I of the plaintiff's Complaint [Doc. 1-9] is hereby **DISMISSED** as to all defendants.

### B. Count III

Count III of plaintiff's Complaint claims:

> By impeding and interfering with Plaintiff Taylor's opportunity to run or campaign for public office and/or retaliating against her for exercising such rights, Defendant OCC [Ohio County Commission], Defendant Hoffman and Defendant Powell sought to deprive Plaintiff Taylor of her rights to due process and equal protection of the law secured by the Fourteenth Amendment to the United States Constitution, by 42 U.S.C. § 1983, and by Article III, § 10 of the West Virginia Constitution. Such depravation of rights do not entitle Defendants to qualified immunity.

[Doc. 1-9 at 7]. Thus, this Court interprets Count III as alleging a claim under both the Due Process and Equal Protection Clauses. This Court will address the due process claim first.

The United States Supreme Court discussed government employment as a property interest in **Board of Regents v. Roth**, 408 U.S. 564 (1972), and defined it as follows:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Id.* at 577. The Supreme Court went on to explain that "[p]roperty interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure benefits and that support claims of entitlement to those benefits." *Id.* Thus, **Roth** defined property as an "entitlement," which exists if

there is a reasonable expectation to continued receipt of a benefit or, in the employment context, an expectation of continued employment. See also **Perry v. Sindermann**, 408 U.S. 593 (1972).

Here, plaintiff has not put forth any contract, statute, or regulation that would purportedly give her a property interest in her employment. This Court agrees with the defendants that "Plaintiff has not pled a single fact that indicates she is anything other than a will-and-pleasure employee" [Doc. 4 at 10]. Plaintiff cites **West Virginia Board of Education v. Marple**, 783 S.E.2d 75, 236 W.Va. 654 (2015), and **Wounaris v. West Virginia State College**, 588 S.E.2d 406, 214 W.Va. 241 (2003), for the proposition that "West Virginia does provide a state law entitling Plaintiff Taylor to due process" [Doc. 5 at 8]. Plaintiff cites **Marple** for the proposition that "[p]ublic employees are entitled to be protected from . . . adverse employment consequences resulting from the exercise of their . . . First Amendment rights," and **Wounaris** for the proposition that "West Virginia state law also protects public employees from retaliation for speaking about matters of public concern" [Doc. 5 at 8]. Based on this Court's earlier discussion regarding First Amendment rights in this context, plaintiff's argument is unpersuasive. Thus, because plaintiff did not have a reasonable expectation to continued employment based on any state law, and was therefore not "entitled" to it, this Court finds she does not have any property interest in her employment. See **Bishop v. Wood**, 426 U.S. 341 (1976) (city police officer who "held his position at the will and pleasure of the city" did not have a property interest in his job, and therefore was not entitled to due process with regard to his termination).

Further, plaintiff does not allege a deprivation of any liberty interest, nor does this

12

Court find one exists on the face of the Complaint. While harm to reputation can sometimes be a deprivation of liberty when actual detriment, such as loss of employment, has occurred, "[d]ue process requires a hearing on the discharge of a government employee 'if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination.'" ***Owen v. City of Independence***, 445 U.S. 622, 661 (1980) (quoting ***Codd v. Velger***, 429 U.S. 624 (1977)). Such creation and dissemination of a defamatory impression is not alleged here. Thus, this Court finds plaintiff did not suffer a deprivation of any liberty interest by defendants' alleged actions.

Accordingly, Count III of the plaintiff's Complaint [Doc. 1-9] is hereby **DISMISSED** as to all defendants, insofar as it claims relief under the Due Process Clause of the Fourteenth Amendment.

Turning now to plaintiff's equal protection claim, plaintiff claims "[u]pon information and belief other employees of Defendant OCC have been permitted by Defendant OCC to run and/or campaign for public office without retaliation dismissals" [Doc. 1-9 at 7]. Thus, plaintiff seemingly claims defendants arbitrarily and intentionally treated her differently from others. When a person alleges to have suffered arbitrary and discriminatory treatment by the Government, such claims are usually permitted under the Equal Protection Clause. In ***Village of Willowbrook v. Olech***, 528 U.S. 562 (2000), the United States Supreme Court stated, "[o]ur cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." ***Id.*** at 564.

13

However, the Supreme Court has also held that government employees cannot bring such "class of one" equal protection claims. In ***Engquist v. Oregon Department of Agriculture***, 553 U.S. 591 (2008), the Court said:

> Our traditional view of the core concern of the Equal Protection Clause as a shield against arbitrary classifications, combined with unique considerations applicable when the government acts as employer as opposed to sovereign, lead us to conclude that the class-of-one theory of equal protection does not apply in the public employment context.

*Id.* at 598. The Court went on to explain that:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 603, 609 ("In short, ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly 'constitutionalize the employee grievance.'").

Thus, plaintiff cannot bring the type of "class of one" equal protection claim she tries to bring here. Accordingly, Count III of the plaintiff's Complaint [Doc. 1-9] is hereby **DISMISSED** as to all defendants, insofar as it claims relief under the Equal Protection Clause of the Fourteenth Amendment.

### C. Count IV

Count IV of the Complaint alleges defendants "violated Plaintiff Taylor's First Amendment rights by engaging in political patronage in retaliation for Plaintiff Taylor seeking the office of Ohio County Assessor" [Doc. 1-9 at 8]. Plaintiff claims she was

14

terminated "solely for political reasons" [Id.].

The United States Court of Appeals for the Fourth Circuit has explained political patronage as follows:

> The **Elrod-Branti** [**Elrod v. Burns**, 427 U.S. 347 (1976); **Branti v. Finkel**, 445 U.S. 507 (1980)] line of cases establishes that a public employee may not, consistent with the First and Fourteenth Amendments, be terminated for her political affiliation or lack thereof. **Elrod**, 427 U.S. at 358-59, 96 S.Ct. 2673 (plurality opinion); **Knight v. Vernon**, 214 F.3d 544, 548 (4th Cir. 2000). "[T]he First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the positions involved." **Rutan v. Republican Party of Ill.**, 497 U.S. 62, 64-65, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). These cases concern the political practice of patronage, or conditioning public employment on party membership or support.
>
> Patronage violates the First Amendment because of the "restraint it places on freedoms of belief and association." **Elrod**, 427 U.S. at 355, 96 S.Ct. 2673 (plurality opinion). Because patronage forces employees to choose either to affiliate with a particular party or risk losing their jobs, it compels speech and belief. **Id.** at 356-57, 96 S.Ct. 2673. However, patronage dismissals of individuals in policymaking positions are constitutional, "to the end that representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." **Id.** at 367, 96 S.Ct. 2673.

**Smith v. Frye**, 488 F.3d 263, 268 (4th Cir. 2007).

This case, however, is not one of pure political patronage. Nowhere in plaintiff's Complaint is it alleged that plaintiff was fired because she held political views different from those of defendants. In fact, there is no mention of political parties or political beliefs whatsoever. Instead, plaintiff is alleging she was fired because she ran for office against her eventual boss, which this Court believes is a different matter.

This Court finds the United States Court of Appeals for the Sixth Circuit's opinion in **Carver v. Dennis**, 104 F.3d 847 (6th Cir. 1997), to be persuasive authority. In **Carver**, the

15

plaintiff was a deputy county clerk who announced that she was running for county clerk against her boss, the defendant, in the next election. *Id.* at 848. The day after making such announcement, the defendant fired plaintiff, which led to plaintiff suing defendant alleging that her termination violated her First Amendment rights. *Id.*

The Sixth Circuit, in affirming the district court's grant of summary judgment in favor of the defendant, explained:

> In the district court, the plaintiff cited **Elrod v. Burns** . . . **Branti v. Finkel** . . . and **Perry** to assert that retention of a government job cannot be based on an employee's political beliefs. But the plaintiff's complaint does not allege, nor does the record contain any evidence whatsoever, that she lost her position because of her political beliefs. The complaint alleges and the record demonstrates only that [defendant] fired her for her rival candidacy, which is a different matter. The constitutionality of dismissing [plaintiff], a government employee, for her political beliefs, her expression of those beliefs, or her political affiliations is not before us.

*Carver*, 104 F.3d at 849-50 (internal citations omitted). Just as the Sixth Circuit found in *Carver*, this Court finds here that plaintiff's complaint does not allege she lost her position because of her political beliefs—which is what *Elrod* and its progeny seek to protect. *See Smith*, 488 F.3d at 271 ("The application of *Elrod's* rationale—protecting public employees for whom political affiliation is not a legitimate job qualification from coercion with respect to their political beliefs—is far less compelling on these facts."). Instead, the Complaint alleges plaintiff was fired in "retaliation" for her competing candidacy. As such, "[t]his was not a patronage dismissal. It was not a dismissal because of political beliefs or affiliations. It was not a dismissal based on politics at all, except to the extent that running for public office is a political exercise in its broad sense." *Carver*, 104 F.3d at 850. "The First Amendment does not require that an official in [defendants'] situation nourish the viper in

16

the nest." *Id.* at 853; *see also* **Underwood v. Harkins**, 698 F.3d 1335, 1345 (11th Cir. 2012) ("Nevertheless, the First Amendment, as interpreted by the Supreme Court and the Eleventh Circuit, did not require [defendant] to graciously embrace and retain her political opponent after becoming superior court clerk of Lumpkin County."); **Smith**, 488 F.3d at 271 ("In the context of at-will employment, such a belief [that a potential conflict of interest would hinder efficient administration] is more than an adequate reason to dismiss an employee.").

Accordingly, this Court finds plaintiff's allegations under Count IV are not protected under the First Amendment. "To hold otherwise . . . would be to read out of the entire line of relevant Supreme Court precedent the factual requirements of political belief, expression and affiliation, partisan political activity, or expression of opinion, and to read into that precedent a fundamental right to candidacy." **Carver**, 104 F.3d at 853. Thus, Count IV of the plaintiff's Complaint [Doc. 1-9] is hereby **DISMISSED** as to all defendants.

### D. State Law Claims

This Court notes that it has dismissed the federal claims present in the Complaint—the basis of this Court's jurisdiction. This Court declines to retain jurisdiction over the remaining state claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); **Shanaghan v. Cahill**, 58 F.3d 106, 110 (4th Cir. 1995) (explaining that district courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."); **United Mine Workers of Am. v. Gibbs**, 383 U.S. 715, 726 (1966) (stating,

as a general rule, that courts should not exercise supplemental jurisdiction over state law claims if all federal claims have been dismissed before trial).

However, because a remand will better accommodate the values of judicial economy, convenience, fairness, and comity, than will dismissal, this Court will remand the remaining state law claims to the Circuit Court of Ohio County. ***Carnegie-Mellon University v. Cohill***, 484 U.S. 343, 357 (1988) ("We conclude that a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate."). As the United States Supreme Court has explained:

> Both litigants and States have an interest in the prompt and efficient resolution of controversies based on state law. Any time a district court dismisses, rather than remands, a removed case involving pendent claims, the parties will have to refile their papers in state court, at some expense of time and money. Moreover, the state court will have to reprocess the case, and this procedure will involve similar costs. Dismissal of the claim therefore will increase both the expense and the time involved in enforcing state law. Under the analysis set forth in ***Gibbs*** [383 U.S. 715], this consequence, even taken alone, provides good reason to grant federal courts wide discretion to remand cases involving pendent claims when the exercise of pendent jurisdiction over such cases would be inappropriate.

*Id.* at 353. Finding no compelling reason to retain jurisdiction over the remaining state law claims, as the state court is equally competent and more familiar with the governing law, this Court finds "the exercise of pendent jurisdiction . . . would be inappropriate" and, alternatively, finds remand appropriate. Accordingly, the remaining state law claims are hereby **REMANDED** to the Circuit Court of Ohio County, West Virginia.

## **CONCLUSION**

For the reasons discussed above, this Court hereby:

- **GRANTS** Defendants' Motion to Dismiss **[Doc. 3]** as to the § 1983 claims in Counts I and IV of the Complaint;

- **GRANTS** Defendants' Motion to Dismiss **[Doc. 3]** as to the § 1983 claim in Count III of the Complaint, insofar as it claims relief under the United States Constitution; and

- **REMANDS** the remaining state law claims to the Circuit Court of Ohio County, West Virginia.

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this Order to all counsel of record herein.

**DATED**: November 28, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE